IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CAREY P. WESTERBACK,

                Plaintiff,

v.                                                                                      OPINION and ORDER

ANDREW SAUL,                                                              20-cv-468-jdp
  Commissioner of the Social Security Administration,

                Defendant.

---

Plaintiff Carey P. Westerback seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Westerback not disabled within the meaning of the Social Security Act. Westerback contends that administrative law judge (ALJ) Patricia Witkowski Supergan erred by failing to adequately consider his subjective complaints. But Westerback relies mostly on evidence from after his date last insured, so the court is not persuaded that the ALJ erred. The court will affirm the ALJ's decision and cancel the hearing scheduled for May 10, 2021.

ANALYSIS

Westerback sought benefits based on physical and mental impairments, alleging disability beginning October 1, 2014, when he was 52 years old. His date last insured was September 30, 2016, so Westerback had to establish that he was disabled by that date. R. 150.[1] In a May 2019 decision, the ALJ found that Westerback suffered from the severe impairment of multiple sclerosis (MS). R. 151. After finding that Westerback's MS wasn't severe enough

---

[1] Record cites are to the administrative transcript located at Dkt. 16.

to meet or medically equal the criteria for a listed disability during the relevant time period, the ALJ ascribed to Westerback the residual functional capacity (RFC) to perform light work with additional environmental and physical restrictions. R. 151. Based on the testimony of a vocational expert, the ALJ found that Westerback was not disabled because he could perform his past job as a telephone solicitor. R. 154. The Appeals Council declined review. R. 6–12. Westerback now appeals to this court.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, meaning that the court looks to the administrative record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Westerback contends that the ALJ erred by failing to adequately address his subjective complaints related to four types of symptoms: (1) fatigue; (2) mental limitations such as "mental fog" and impaired recall; (3) "hand problems," such as numbness, tingling, and weakness, and (4) "speech problems." Dkt. 21, at 13–14. He cites the following evidence to support these symptoms:

**Fatigue**: (1) a function report from 2018 in which he says he needs to nap twice a day, R. 419; (2) a doctor's note from August 2015 that Westerback "feels like he fatigues a little more eas[i]ly than he used to," R. 578; (3) a doctor's note from August 2016 that Westerback "fatigues fairly easily" and takes naps "some days," R. 570–71; and (4) a statement from his

2

daughter's function report dated "07/05/2000" that he "gets tired . . . easily" and "sleeps most of the day," R. 488–89. [2]

**Mental limitations**: (1) a statement from his function report that he doesn't "remember people as much or dates and timeframes," R. 418; and (2) checkboxes from his brother's 2018 function report indicating that Westerback's medical condition "affect[s]" his memory.

**Use of his hand**: (1) statements from his function report that his hands get tired when he shaves, he "sometimes drops glasses of water and other things," and he uses the mixer rather than stirring things because his hands get tired, R. 419–20; (2) checkboxes from his brother's and daughter's function reports indicating that his MS "affect[s]" the use of his hands, R. 493, 505; and (3) a statement from his daughter's function report that he "lacks fine motor skills," R. 491.

**Speech**: (1) a statement from his function report that his "speech isn't as sharp and [he] can't speak quick like [he] used to," R. 418; (2) a statement from his brother's function report that Westerback's "speech is garbled," R. 500; and (3) a doctor's note from August 2014 that Westerback's speech was "a bit slow but deliberate," R. 593.

The court concludes that the ALJ's decision is supported by substantial evidence and that the ALJ didn't err by failing to include additional restrictions in the RFC to account for the evidence Westerback cites. In finding that Westerback didn't qualify for benefits, the ALJ emphasized that he was considering Westerback's abilities through September 30, 2016 only.

---

[2] It appears that Westerback's daughter mistakenly entered her birthdate on the line for the date of the report. But her function report entered the record around the same time as the other function reports, so it's reasonable to infer that she prepared the report in 2018 as well.

Westerback doesn't challenge the ALJ's conclusion that Westerback would not be eligible for disability benefits unless he could establish disability by that date. So evidence of Westerback's condition after that date isn't relevant, and the ALJ wasn't required to consider it, unless it was informative of Westerback's condition before September 30, 2016.

To support his finding that Westerback could perform light work as of September 2016, the ALJ relied on the following evidence:

- Westerback declined treatment when he was first diagnosed with MS in October 2014;

- a January 2015 examination was normal and Westerback had no complaints;

- throughout 2015, Westerback received only "routine care" and didn't consult with a neurologist;

- as of August 2016, there was no "big" change in symptoms, and Westerback was advised to follow up in one year;

- Westerback's testimony that he'd been using a walker since 2014 was inconsistent with his own medical records;

- the state agency consultants found that Westerback was capable of performing light work through September 2016, with additional restrictions that the ALJ adopted; and

- the opinion of Westerback's neurologist didn't relate to the relevant time period.

R. 153–54.

The ALJ noted some of Westerback's subjective complaints, but the ALJ said that they were inconsistent with Westerback's medical records and his own reporting of symptoms at the relevant time. R. 153. The ALJ also said that Westerback needed more than just subjective complaints to support his disability claim. R. 152; *see also* SSR 16-3p ("[A]n individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.").

The evidence cited by the ALJ, none of which Westerback challenges, is more than enough to uphold the ALJ's decision under the relevant legal standard. And the evidence Westerback cites doesn't undermine the ALJ's findings.

Westerback relies almost entirely on function reports that were prepared in 2018. All of the reports are written to describe Westerback's symptoms in the present, not his condition between 2014 and 2016. So those reports don't support his claim, and the ALJ didn't err in declining to credit them.

This leaves Westerback's statements from his medical records in 2014, 2015, and 2016 that he "feels like he fatigues a little more eas[i]ly than he used to," R. 578, that he takes naps "some days," R. 570–71, and that his speech is "a bit slow but deliberate," R. 593. But Westerback doesn't explain how any of those statements about mild symptoms would translate into additional restrictions in the RFC.

Westerback also cites medical records that he had "leg fatigue" in July 2015, that he had gait issues in July 2016, and that he was prescribed amantadine for fatigue in August 2016. The ALJ considered these records, but he didn't think they supported a finding of disability. The court isn't persuaded that the ALJ erred.

Westerback doesn't explain how gait issues or leg fatigue are related to any of the issues he is raising on appeal or how those symptoms would prevent him from working as a telephone solicitor. As for the amantadine prescription, Westerback received the prescription at the same appointment in which he said that he "fatigues fairly easily" and "takes naps some days." R. 546. He also said that there was no big change in his symptoms, and he could walk a quarter of a mile. *Id.* And the doctor didn't say that he was prescribing amantadine because it was necessary. Rather, the record states that Westerback was "wondering" about amantadine and

5

was "going to try it." *Id.* In fact, the doctor didn't ask for a follow up appointment for another year. *Id.* In light of these facts, the court sees no basis for concluding that the prescription alone shows that Westerback's fatigue was significant enough at the relevant time to require additional restrictions.

Westerback also raises additional issues in his reply brief. But he forfeited those by failing to raise them in his opening brief. *See Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016).

## ORDER

IT IS ORDERED that that the decision of the commissioner is AFFIRMED and the May 10, 2021, oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered April 27, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge